## Case No. 4,098.

### The D. SARGEANT.

[Blatchf. Pr. Cas. 576.]¹

District Court, S. D. New York. Dec., 1863.

PRIZE — VIOLATION OF BLOCKADE — CONTEST BY CITIZEN OF INSURRECTIONARY STATE—CLAIM BY AGENT.

1. The decision of the supreme court in The Prize Cases (2 Black [67 U. S.] 635) as to the questions of war and blockade, applied to this case.

2. A citizen of a state in insurrection has, legally, no locus standi in a court of the United States, to contest ·a prize seizure.

3. Effect of a claim and answer in a prize suit, put in and verified by an agent, and not by the owner.

4. Vessel and cargo condemned for a violation of the blockade.

BETTS, District Judge. The vessel and cargo in this case were captured March 12, 1863, off Galveston, by the United States vessel-of-war Kittatinny, as lawful prize. The vessel as being unseaworthy, was sent into New Orleans, and was left there, after being appraised and valued at $1,500. Her cargo was transmitted to this district for adjudication, and was here arrested, by due process of law, and proceeded against for condemnation, in the present suit. The libel was filed May 12, 1863. The warrant and monition issued thereon were returned by the marshal duly served June 2, and an answer and claim on the part of the claimant was filed June 16 thereafter.

Two broad lines of defence are assumed by the claimant in his pleadings. He asserts his absolute exemption from liability to the arrest and prosecution of his vessel and cargo as prize, for the reasons—First, "that no war existed between the United States and any other people or nation or power, whereby any forfeiture or condemnation of the said vessel or cargo has been incurred;" and, second, that "no blockade of any port or ports existed or was known to the claimant, whereby the vessel and cargo were liable to any seizure, capture, or condemnation." It is sufficient to observe, upon these points of defence, that, contemporaneously with the unlawful conduct of the vessel and cargo, pursued and directed through the personal agency of the claimant, the supreme court of the United States declared and pronounced each and every of those positions of the claimant to be erroneous and utterly fallacious in judgment of law. The Prize Cases, 2 Black [67 U. S.] 635. The express denial, in the answer, "that the vessel, at the time of her capture, was attempting to violate any blockade, or any proclamation by which any blockade had been established," demands no inquiry or consideration by the court. since the own-

¹ [Reported by Samuel Blatchford, Esq.]

er and master of the vessel testifies, on his preparatory examination, that he knew that the port of Galveston was under blockade, and that he intended, on this voyage, to elude that blockade if he could. He could scarcely hope to cover that culpability by asserting that he came out of one of the passes by the harbor, and did not see either of the blockading vessels at the time. The other witness, Brown, states the matter with more openness. He says that he knew that Galveston was blockaded; that he saw the blockading vessels off the bar; that when he shipped he knew it was the intention to run out and elude the blockading vessels; and that the vessel ran out of the St. Louis pass, and did not see any of those vessels at the time. Both of the witnesses testify that the vessel came out of Galveston under the Confederate flag. The vessel and cargo were purchased by the claimant in Texas, in February, 1863. The register of title was executed to him by the Confederate government, February 27, 1863, on his own oath of citizenship and ownership, in Texas. This appears upon the face of the register. So, also, the bill of sale of the vessel, dated in Houston, Texas, February 18, 1863, conveys the vessel to the claimant, who is described therein as of that place, for the consideration of $8,000. The shipping articles or agreement signed by the claimant February 17, 1863, as master, and by the crew, stipulate for a voyage to Honduras, or for a market, "and back to a port or place in the Confederate States of America." Those articles are certified, on the back of them, by the collector of Galveston, February 28, to be a true copy of the original then on file in his office. The master filed the manifest of his cargo, and obtained the clearance· of his vessel at the custom-house at Galveston, on the same day. He testifies that he had no other than Confederate colors and papers on board, and that he sailed out under a military pass from Houston. He asserts himself to be a native of Copenhagen, in Denmark, and says that his home for the last twenty years has been in New Orleans during the winter, and in the northern states during the summer. His own oath to his being a citizen of Texas, taken at Houston, on obtaining a registry of this vessel to himself, in February, 1863, concludes him as to the fact that he was then a citizen of an insurrectionary state, and an enemy of the United States. The claim interposed in his name would, accordingly, be a void paper, as he has legally, being a rebel, no locus standi in a court of the United States, to contest a prize seizure. But, furthermore, the claim filed in this case was interposed by an agent of the owner of the vessel and cargo, who does not assume to have personal knowledge of the facts he suggests; and the statement and attestation by way of test oath thereto, in that method, inures in no way as evidence, nor does it amount to more than an argument by counsel on the instructions of the principal

party. The court is not thereby called upon to moot the point whether such suggested circumstances would constitute a defence to the suit under the doctrines of international law.

The counsel for the claimant refers to a decision of the circuit court at the present term, in the case of U. S. v. The General C. C. Pinckney [Case No. 5,309], reversing a decision rendered in this court in the year 1862, in an analogous case. It appears, however, that the principle of law adopted by the district court was not discountenanced by the appellate court, but that the judgment was placed upon the further proofs introduced into the case after its appeal. The report of the new decree does not set forth the facts upon which the circuit court ultimately acted. It is needless for this court to remark, that if it were made to appear that this suit comes before this court with the same features presented by the one carried to the circuit court, the judgment of the latter would be entirely conclusive over this tribunal.

Certainly, in a leading particular, the cases differ. The proof which controlled in the case of The General C. C. Pinckney was accumulated evidence, as noticed in the decision of the appeal, demonstrating, beyond question, that the honest purpose of the claimant was to remove entirely his family and effects out of the rebel country so soon as the war was set on foot; whilst in this case, there is not an iota of proof, written or oral, that the claimant had any other motive for the voyage he undertook, than to realize the advantage of a probably profitable mercantile adventure. He sought a neutral market for his cargo, and pledged himself, in the adventure, to return, with his vessel, within the Confederate States. The defence puts no other aspect upon the enterprise than that of a bold daring by the claimant of the hazard of running an efficient blockade of Galveston, with the enemy flag displayed, and, perhaps, the aid of the obscurity of night, or the use of greater dexterity and speed in the movements put forth than would be employed against his effort. The defence does not indicate that the claimant was seeking the protection and security of a friendly hand to favor his enterprize, for, on the record, he contemns all authority or right on the part of the United States to take cognizance of his open and flagrant violation of the blockade in this attempt. Only on being arrested in committing the guilty act does he assume the bearing of an oppressed man seeking to fly from rebel tyranny, and to shelter himself and his property under the guardianship of the United States. The avowal of that intention is suspiciously late. I am of opinion that the case is a clear one for the condemnation and forfeiture of the vessel and cargo. Decree accordingly.